# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

**LETTER OPINION**
**NOT FOR PUBLICATION**

May 6, 2008

Jeffrey M. Okun
321 Broadway, 3rd Floor
New York, NY 10007
    (*Attorney for Petitioner*)

Christopher J. Christie, United States Attorney
Peter G. O'Malley, Assistant United States Attorney
970 Broad Street, Suite 700
Newark, NJ 07102
    (*Attorney for Respondents*)

    RE:    Sanusi v. Chertoff, et al.
             Civ. No. 07-16 (WJM)

Dear Counsel:

    Petitioner Rasaq Opeyemi Sanusi brings this motion for attorney's fees pursuant to the Equal Access to Justice Act ("EAJA") § 204(a), 28 U.S.C. § 2412(d). Petitioner seeks fees as the prevailing party in his petition for a writ of *habeas corpus*. For the following reasons, Petitioner's motion is **GRANTED**.

### Background and Procedural History

    Sanusi is a native of Nigeria who originally arrived in the United States on October 16, 1997. He was refused admission and processed for expedited removal, but on October 22, 1997 he was permitted to pursue an asylum claim, after establishing a credible fear that he would be persecuted or harmed if returned to Nigeria. On March 23, 1998, his asylum

claim was denied. Sanusi did not appeal that decision. A final order of deportation issued, and Sanusi filed for relief under the Convention Against Torture. That application was denied on March 16, 2000, and after various motions for reconsideration and appeals, the Second Circuit upheld the denial on April 18, 2006 in *Sanusi v. Gonzales*, 445 F.3d 193 (2d Cir. 2006). Sanusi has also pursued reopening his original asylum application, but thus far has been unsuccessful.

This Court will not undertake to provide an exhaustive summary of Sanusi's filings over the years; what is relevant here is that Sanusi remained in detention for over ten years while he extensively litigated both the merits of his removal order and the question of his continued detention, and was granted stays of removal while his various appeals have been pending. Sanusi's filings have included a petition for a writ of *habeas corpus* in the U.S. District Court for the Eastern District of New York, which was denied on July 22, 2003 in a decision that was later upheld by the Second Circuit Court of Appeals. *Sanusi v. INS*, No. 03-0193, 2003 U.S. District LEXIS 25235 (E.D.N.Y. July 22, 2003), *aff'd*, 100 Fed. Appx. 49 (2d Cir. 2004).

In his habeas petition in this Court, filed January 9, 2007, Sanusi raised some of the same claims he raised in his prior habeas case, including that his lengthy detention violated his right to due process of law under the Fifth Amendment. Here, Sanusi also argued that he was not receiving the type of custody reviews to which he was entitled under applicable regulations. Prior to his release on November 9, 2007, his most recent custody reviews had been paper reviews conducted on March 17, 2004 and April 26, 2006.

In its Answer to Sanusi's petition, the Government contended that the petition should be denied and the matter should be dismissed, and that Sanusi should remain in custody. On October 15, 2007, the Court scheduled a status conference regarding Sanusi's pending habeas petition, and informed the parties by letter that they should be prepared to update the Court on two issues — (1) the current status of Sanusi's immigration matter, and (2) whether Sanusi had received a custody review in 2007. The Court also requested a copy of any custody review worksheet that had been produced in 2007. The Court requested updates on these particular issues because of their direct relevance to the Court's determination of whether Sanusi's continued detention after ten years in custody violated his right to due process.

At the status conference on October 31, 2007, the parties indicated that there had been no new custody review since April 26, 2006. Both parties were wholly unprepared to address the Court's questions regarding the status of the pending immigration matter. At that point, based on a combination of factors including: (1) the lack of a custody review in 2007; (2) Sanusi's lack of any criminal history or disciplinary violations while in custody; (3) the fact that Sanusi had never been deemed a flight risk or a danger to the community; (4) the fact that the Government had not been able to ascertain the status of Sanusi's

immigration matter, let alone predict how much longer Sanusi might be detained while awaiting final resolution of his appeals; and (5) the sheer duration of Sanusi's detention to date, this Court concluded that under the circumstances, Sanusi's continued detention violated due process, and ordered Sanusi released subject to the parties finalizing where Petitioner would go and what the terms and conditions would be.  The Court, therefore, effectively granted the petition at the status conference, which is why the Court's subsequent order granting the petition was issued *nunc pro tunc* effective October 31, 2007.  Sanusi was ultimately released from custody on November 9, 2007.

## Motion for EAJA Fees

Petitioner's motion for an award of attorney's fees pursuant to 28 U.S.C. § 2412(d) is now before the Court.  Petitioner requests a total of $7,094.01 in fees and costs, reflecting 40.6 hours of attorney time at $170.85 per hour ($6,936.51), plus $157.50 in costs.  The Government does not challenge the fee rate or the reasonableness of the hours expended.  The Government does, however, challenge Petitioner's status as the prevailing party, and also asserts that fees should not be awarded because the Government's position was substantially justified.

The Court finds that Petitioner is the prevailing party.  At the status conference in this matter on October 31, 2007, the Court clearly ordered Sanusi released subject to the parties developing a plan.  The Court effectively granted the petition at the October 31 status conference, and Sanusi was released on November 9 pursuant to that order.  Although the order was not signed until November 16, the Court explained on the record on that date that the order was being issued *nunc pro tunc* effective October 31 because the Court considered the petition as having been granted at the October 31 status conference.  Therefore, Sanusi is the prevailing party for purposes of EAJA.

The Court also finds that the Government has not substantially justified its position.  The Supreme Court has defined substantial justification under EAJA as "justified in substance or in the main — that is, justified to a degree that could satisfy a reasonable person."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).  In other words, "the government's position is substantially justified 'if it has a reasonable basis in both law and fact.'" *Morgan v. Perry*, 142 F.3d 670, 683 (3d Cir. 1998) (quoting *Hanover Potato Products, Inc. v. Shalala*, 989 F.2d 123, 128 (3d Cir. 1993).  The government has the burden of establishing that there is substantial justification for its position, and to do so it must show: (1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory it propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced.  *Morgan*, 142 F.3d at 683.  The government's position under EAJA includes "not only the position taken in the litigation but the agency position that made the litigation necessary in the first place."  *Hanover Potato Products*, 989 F.2d at 128.  Thus, unless the government's pre-litigation and litigation positions have a reasonable

3

basis in both law and fact, the government's position is not substantially justified. *Id.*

As an initial matter, the Court is troubled by the Government's failure to consider a release plan at the onset of this case. Sanusi's habeas petition was filed in January 2007, at which point Sanusi had been in detention for over nine years — a length of time which was of great concern to the Court, regardless of the fact that it largely resulted from Sanusi's own pursuit of appeals. Prior to the status conference on October 31, 2007, however, the Government had given absolutely no indication that it was amenable to a release plan for petitioner. To the contrary, the Government had advocated only that release need not and should not be contemplated, and that Sanusi's petition should be summarily denied. Govt's Answer and Request to Dismiss the Petition ("Answer"), March 7, 2007, at 2. At the status conference, the Government expressed — for the very first time — that it was agreeable to Sanusi's release and was working on a plan. The Court is at a loss to explain why such a plan was not considered earlier, given that absolutely nothing had changed between the filing of the petition in January and the conference in October that made Sanusi any more or less appropriate for detention. Yet instead of examining the individual facts in this case that might have warranted consideration of release in early 2007, the Government simply filed its Answer arguing that Sanusi's continuing detention was wholly justified, and then apparently did nothing until the Court scheduled a status conference seven months later. The Court can only conclude that had it not scheduled a conference and signaled its intention to carefully scrutinize Sanusi's case, the Government would have remained satisfied with continuing detention and minimal review.

In its Answer, the Government contended that Sanusi was "essentially . . . delaying effectuation of his removal for well over six years through his continuous and repetitious filings," and noted the Second Circuit's earlier ruling that while the length of Sanusi's detention — at that point, approximately six years — was "extremely regrettable," the Court could not say that the duration itself violated due process, because the detention had been prolonged primarily by Sanusi's pursuit of final judicial review of his claims. Answer at 1, 6-7; *Sanusi*, 100 Fed. Appx. at 51. However, the Government does not appear to have even considered how the difference between six years and nine or ten years might affect the due process calculus. In fact, none of the cases relied upon by the Government in justifying its position involved detention of the length at issue here, of an individual like Sanusi — in his fifties, with no criminal history and no disciplinary violations while in custody, who had never been designated a flight risk or a danger to the community, and who in the three years preceding the instant petition had received only two paper reviews of his continued detention.[1] Perhaps most disturbing is the fact that as of October 2007 Sanusi had been

---

[1] With respect to Sanusi's argument that his custody reviews in 2004 and 2006 failed to meet the exact requirements set forth in 8 C.F.R. § 241.4(i), the Court notes that those requirements were not mandatory in this case because Petitioner, having received a stay of removal, was not yet in the removal period. For the same reason, the "reasonable

4

detained for over ten years, but more than a year and seven months had elapsed since his most recent custody review.

On the specific facts presented here, the Government's general failure to conduct an individualized review of Petitioner's status cannot be said to meet the due process requirements described in *Ngo v. Lam*, 192 F.3d 390, 398-99 (3d Cir. 1999). Due process guarantees, at the very least, personalized review of a detained alien's individual, evolving circumstances. Moreover, "[w]hen detention is prolonged, special care must be exercised so that the confinement does not continue beyond the time when the original justifications for custody are no longer tenable." *Id.* at 398. No such care was exercised here.

Because the Government applied the law without regard for the full and complete factual picture in this case, therefore, the Court finds that the Government's position was not substantially justified.

## Conclusion

For the foregoing reasons, Petitioner's motion is **GRANTED**. Pursuant to EAJA, this Court grants Petitioner a total award of $7,094.01. In accordance with this Court's recent opinion in *Chonko v. Commissioner of Social Security*, No. 06-1647, 2008 U.S. Dist. LEXIS 32867, 2008 WL 1809188 (D.N.J. Apr. 22, 2008), this amount is awarded directly to Petitioner rather than to Petitioner's counsel. An appropriate Order accompanies this Letter Opinion.

    s/William J. Martini
**William J. Martini, U.S.D.J.**

---

time" requirements in *Zadvydas v. Davis*, 533 U.S. 678 (2001), also did not apply. Nonetheless, detainees in Sanusi's position have a due process right to periodic, individualized review of their custody status, and compliance with the requirements of § 241.4(i) would certainly have been one indicator that due process was being provided.

5